# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| MARCO STEPHENSON, | § | |
|     Plaintiff, | § | |
| | § | CIVIL ACTION NO.:_____ |
| | § | |
| vs. | § | ECF |
| | § | |
| ALLCO, L.L.C., ALLCO | § | |
| CONSTRUCTION COMPANY, ALLCO, | § | |
| INC., and ALLCO CONSTRUCTION | § | |
| INCORPORATED, | § | |
|     Defendant. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

### I. Parties

1.01. Marco Stephenson, ("Plaintiff") is an individual who resides in Dallas County, Texas.

1.02. Allco, L.L.C.,("Defendant") is a corporation authorized to do business in Texas and may be served with process by serving its registered agent for service of process, T W Harrison, 6720 College, Beaumont, Texas 77707.

1.03  Allco Construction Company, ("Defendant") is corporation authorized to do business in Texas and may be served with process by serving its registered agent for service of process, T W Harrison, 6720 College, Beaumont, Texas 77707.

1.04  Allco, Inc., ("Defendant") is a corporation authorized to do business in Texas and may be served with process by serving its registered agent for service of process, Tom L. Knudsen, Route 5, box 15, Georgetown, Texas 78766.

1.05  Allco Construction Incorporated, ("Defendant") is a corporation authorized to do

business in Texas and may be served with process by serving its registered agent for service of process, A Wayne Palmer, 6736 Navigation, Houston, Texas.

## II. Jurisdiction

2.01.   The Court has jurisdiction over the lawsuit pursuant to 28 U.S.C. § 1331, as the action arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*.

## III. Venue

3.01.   Venue is proper in the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1391(c) as TRAT is subject to personal jurisdiction in the Dallas Division of the Northern District of Texas.

## IV. Factual Background

4.01.   Plaintiff is a former employee of Allco, and was employed by Allco for approximately seven to eight months as a Laborer working out of Seagoville, Texas facility.

4.02   Plaintiff complained to Gary (Last Name Unknown), W/M, Supervisor of Mark Ford, W/M, Supervisor to Stephenson, prior to his termination, about racial discrimination. Defendant's supervisor did not want him on his crew, and Plaintiff was working in a hostile working environment.

4.03   Plaintiff was hired by Gary (Last Name Unknown) to work for Allco in June , 2007. Plaintiff was assigned to work on Mark Ford's crew. Mark told him, "You're not my Negro, you're Gary's Negro. Gary put you on my crew to torment me." Stephenson was the only African-American man on Mark Ford's crew . The other men on the crew got into the habit of calling Stephenson a "Nigger" because of Mark.  Mark Ford told Stephenson this joke in front of other crew members " If a Nigger breaks into your house,

the best way to keep your money is in a book because that's like cryptonite to a Nigger." Mark called Stephenson stupid, dip shit, and moron. The other men on the crew, while Mark was present, would say, "You're just a big pussy that the world keeps fucking". Defendant's employees called Plaintiff Black Beauty, and Black Stallion   The other employees said Plaintiff was the "Bitch" of the crew because Mark treated him so badly.

4.04   Plaintiff's girl friend Shannon Boyle, a White Female, drove him to work in her car. Mark said, "I don't want her bringing you to work. If she does, I'll file trespassing charges against her." Mark told Plaintiff on many occasions to "break up with that crazy White girl." Mark said to Plaintiff, "I hate interracial dating. If you were going out with my daughter, I'd blow your head off." Mark told Plaintiff, "I was messing with a white girl because I have LDS (little dick syndrome).

4.05   Mark would buy soft drinks for the crew, but would not allow Plaintiff to have one. Mark would complain about Plaintiff drinking water during the heat of the summer. Daniel Peck, a white lead man on Mark's crew, proclaimed he was a Satanist. He would use his appearance as an intimidation tactic, He was about 6'2", shaved head with eye balls tattooed on his head and 666 tattooed on his arm. Daniel got into an argument with Mark and Mark said to him, " What do I have to do, talk to you like a wetback." When Mark told Daniel to tighten the turnbuckle,  Daniel got mad and said to Mark, "What the fuck do you want me to do. I'm just a stupid wetback, get your black boy to do it."

4.06   Richard Peck, another White male on Mark's crew, who proclaimed to be a Satanist, would also try to physically intimidate Plaintiff. Both Richard and Daniel would push, shove and threaten Plaintiff and try to provoke him into a physical fight. Plaintiff knew that if he did, he would have been fired. Mark knew that Richard and Daniel Peck would

pat Plaintiff on his hips.  Richard and Daniel were brothers and were Mark's favorites on the crew.

4.07   One Saturday in December, Mark wanted Plaintiff to work on Sunday.  Plaintiff told him Plaintiff could not work on Sunday because he was going to church.  When Plaintiff got to work on Monday, Mark said, " You must not like money; before long you'll be living under a bridge."

4.08   Mark was not the only one on the crew who made racial and derogatory remarks.  Frank (Last Name Unknown), W/M,  told a joke, " Do you know why a black guys walks like this."   He mimicks holding his hands to his crotch. " Because they got tired of walking like this."  He proceeds to walk with both arms above his shoulders as if carrying a heavy weight.

4.09   In front of Mark, an employee told a joke, "What do you call a black doctor in Central Park?  A Nigger."

4.10   Mark was present while Plaintiff was doing concrete work.  Power was needed to vibrate the concrete work.  Plaintiff said, " Somebody give us some power for the generator."  Carl (Last Name Unknown), W/M, said, "Somebody slap that nigger."  Plaintiff was constantly called "black boy."

4.11   Antonio Slumber, an African-American male,  worked on a different crew.  His supervisor Toby (Last Name Unknown), W/M, also called him"black boy."

4.12   Byron Mims, an African-American male, worked there, but Bryon quit because of the way they talked to him.

4.13   On at least two occasions, Mark told Plaintiff that "I can get a monkey to do your job."  To humiliate Plaintiff, Mark would tell Plaintiff to go pick up the other employee's tool

belts at the end of the day. It is an employee's responsibility to pick up their own tool belts. Plaintiff was always given the worst job.

4.14   Mark told Plaintiff that he had a rule, "No one gets into my truck before I do." Apparently, this rule only applied to Plaintiff, because Richard Peck, W/M, and Daniel Peck, W/M, would be in Mark's truck before Mark. Richard was in Mark's truck, Plaintiff was going to get in the truck. Mark said, "Get your Negro ass in the back of the truck."

4.15   Frank (Last Name Unknown), W/M, said " Where I'm from Blacks aren't allowed in certain areas. The gators love dark meat."

4.16   Mark told Plaintiff not to talk to anyone while Plaintiff was in the back of his truck. The other white employees were allowed to talk in the truck. He told Plaintiff "not to talk because Plaintiff sounded like a dog."

4.17   Mark told Stephenson to clean up a deep well and pull nails out of the wall. Richard, Louis (Last Name Unknown), W/M, and Jose (Last Name Unknown), W/M, pulled the ladder out of the well while I was working down inside. They told me I was going to have to spend the night there. They told me I had to climb out. Louis eventually put the ladder back down, and I climbed out. Then Mark made me go back down in the well to finish the work.

4.18   Mark said black people fish with a cane pole because with a rod and reel you have to buy a fishing license.

4.19   Mark told Plaintiff he could go to the restroom. So Plaintiff caught a ride with another Caucasian employee going to the restroom about a quarter of a mile away. Mark was upset because Plaintiff caught a ride to the restroom. Mark said to Plaintiff, "When I say

walk, you walk." Mark would not complain if the white employees had to use the restroom, but would complain about Plaintiff going to the restroom once or twice a day.

4.20  Tommy (Last Name Unknown), W/M, informed Plaintiff that he heard Mark tell Jose (Last Name Unknown), W/M, Lead Man, at the time, to work Plaintiff to death so Plaintiff would quit. Plaintiff was working in Seagoville, Texas when Plaintiff was terminated.

4.21  Gary (Last Name Unknown), W/M, told Plaintiff that Mark and Kyle (Last Name Unknown), W/M, said Plaintiff was slow, and Plaintiff was going to have to let Plaintiff go.

4.22  After Plaintiff was terminated, Plaintiff went to get his last paycheck. Toby (Last Name Unknown), W/M, another supervisor, called Frank the jobs foreman and said, " That black boy you all fired the other day is here looking for his check." Plaintiff said, "My name is Marco. " Toby repeated, "yeah that black boy you fired the other day."

4.23  Plaintiff was called a "Nigger, Jigbo, Negro, stupid, and moron, by his supervisor and other Caucasian employees on a daily basis. Gary (Last Name Unknown), W/M, knew about it and failed to take corrective actions to stop it and/or prevent it.

4.24  Mark Ford, Supervisor, W/M, would let other Caucasian employees hit Plaintiff

4.25  Mark Ford told other workers that he just did not like Plaintiff and wanted to fire him.

4.26  Defendants engaged in a campaign to humiliate Plaintiff and to attempt to force a constructive discharge and a workplace where African-Americans would not seek work.

4.27  The discriminatory acts were egregious and pervasive; higher management knew but failed to take appropriate preventive and corrective actions.

4.28  Plaintiff was terminated from Allco and discriminated against by Allco based upon his

race, African-American, and subjected to discriminatory conduct and conditions of employment, including but not limited to, threats to have pay reduced; refusals to use the restroom as needed and at reasonable times, job segregation and the assignment of more arduous duties, denials of transportation commensurate with that afforded Caucasian co-workers, and subjected to dangerous workplace harassment and ongoing racial slurs of the most offensive nature from Mark Ford, Supervisor, and other Caucasian employees whose conduct was condoned by Allco.

## V. Exhaustion of Administrative Procedures

5.01. Plaintiff timely filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination against Allco. Plaintiff received a Notice of Right to Sue (Conciliation Failure) from the EEOC within 90 days of the filing of this Complaint. A true and correct copy of the Notice of Right to Sue Letter and Charge of Discrimination is attached collectively as Exhibit "A" and incorporated herein.

## VI. Title VII

6.01. Stephenson is an African-American male. He is a member of a protected class under Title VII.

6.02. ALLCO is an employer who is covered by Title VII.

6.03. Plaintiff was exposed to discriminatory terms and conditions of employment, and a hostile work environment because of his race, African-American in violation of Title VII.

6.04. Plaintiff was fired due to his complaints regarding Mark Ford's, Richard Peck's, Daniel Peck's, Frank's (Last Name Unknown), Louis' (Last Name Unknown), Jose's (Last Name Unknown), Toby's (Last Name Unknown), and Kyle's (Last Name Unknown), racial discrimination and a hostile work environment in violation of Title VII.

6.05. Allco's acts of discrimination were performed with malice and reckless disregard for Plaintiff's protected civil rights.

## VII.  Damages

7.01. Plaintiff has suffered the following injuries as a direct and proximate result of ALLCO's conduct:

a.  loss of past wages;

b. loss of future wages;

c. loss of benefits; and

d. emotional distress and mental anguish in the form of insomnia and depression.

## VIII.  Punitive Damages

8.01. Plaintiff will show that he is entitled to exemplary damages as a result of the willful, intentional and malicious wrongful discharge/termination and/or discrimination by the Defendant. Plaintiff is further entitled to exemplary damages in that the defendant acted with intentional malice in terminating their employment.

## VII.  Attorney Fees

8.01. Plaintiff is entitled to an award for attorney fees and costs under Title VII.

## X.  Demand for Jury

9.01. Plaintiff request a trial by jury for all issues so triable.

## XI.  Prayer

10.01. PREMISES CONSIDERED, Plaintiff respectfully request judgments against Defendant. for:

a.     Back pay;

b.     Front pay;

    c.    Compensatory damages for mental anguish, emotional distress, inconvenience, past pecuniary losses and loss of enjoyment of life;

    d.    Compensation for lost benefits;

    e.    Punitive damages due to Defendant's intentional conduct;

    f.    Attorney's fees incurred herein and in any proceeding before the Unites States Court of Appeals for the Fifth Circuit and the United States Supreme Court;

    g.    Costs of court;

    h.    Pre-judgment and post-judgment interest on the above amounts; and

    i.    All other legal and equitable relief to which Plaintiffs may show himself justly entitled.

Respectfully submitted,
**Law Offices of Christian Jenkins, P.C.**


/s/ Christian Jenkins
Christian Jenkins
State Bar No.: 10625500
Old Town Office Plaza
1307-B West Abram Street, Suite 100
Arlington, Texas   76013
817.461.4222
817.461.5199 – Facsimile